UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS AUGUSTINE VASQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF IDAHO FALLS,<br><br>    Defendant. | Case No. 4:16-cv-184-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

This employment discrimination case comes before the Court primarily on Defendant the City of Idaho Falls' ("the City") Motion for Summary Judgment. Dkt. 20. Also pending before the Court are two motions to strike. Dkts. 28, 29. Plaintiff Luis Augustine Vasquez claims the City unlawfully fired him from his position within the City's Department of Parks and Cemeteries because of (1) his race and (2) in retaliation for complaints he made about (a) the discrimination he was experiencing and (b) the City's failure to comply with state law regarding casket vaults and tombs in the City's cemeteries. For the reasons set forth below, the Court GRANTS the Motion for Summary Judgment, GRANTS IN PART the City's Motion to Strike, and DENIES AS MOOT Vasquez's Motion to Strike.

# II. BACKGROUND[1]

Vasquez is a 42-year old Hispanic Mexican-American. He began working for the City in 2004. He obtained a position as a seasonal laborer with the City's Department of Parks and Cemeteries in 2005. Vasquez's immediate superior was Jeff Baird, and Baird's supervisor was Daris Powell. In 2007, Vasquez applied for a position as a full-time, year-round Cemetery Attendant. Powell hired Vasquez for the position. During the hiring process, Baird asked Powell who he was hiring to fill the position. When Powell indicated he was hiring Vasquez, Baird asked, "you're not hiring that wetback, are you?" Dkt. 24-7, at 2 (Powell declaration). In addition to this comment, Powell asserts that he heard Baird make "racist comments in [his] presence several times per month during the 18 years or so he worked for the city." *Id.* Powell reported these comments to the Superintendent (first Jim Chadwick and later Eddie Farr, after Chadwick retired in 2008). *Id.* at 3. According to Vasquez, Powell recommended that he record all of the racist comments Baird made to him, because the City was refusing to take disciplinary action against Baird for his comments. Dkt. 24-2, at 2–3. Vasquez claims he "recorded all Jeff Baird's discriminatory comments and improper treatment of burial sites in a black spiral notebook . . . and several red calendars (for each year from 2010 through 2015) which [he] kept in [his] desk, which [he] personally owned, at the cemetery office." *Id.* Vasquez has submitted affidavits from other individuals that confirm Baird made many racist and inappropriate statements while at work over the years. *See* Dkt. 24-6 (declaration of

---

[1] The following facts are construed in the light most favorable to Vasquez, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Malim Byington, owner of Byington Memorials and Funeral Products, LLC, confirming that "Baird was . . . sexist and racist").

In 2009, Vasquez reported Baird to Powell after Baird purposefully broke a buried vault in order to fit another vault into the ground that otherwise would not fit. Dkt. 20-4, at 7 (Vasquez deposition). Apparently, the buried vault had not been placed properly. Powell confirmed that Baird "often buried caskets in the wrong place" or "misplaced . . . casket[s] by a good 6 to 8 inches," such that they encroached on adjacent plots. Dkt. 24-7, at 3.

Powell retired in 2010. When he retired, he "warned [his] superiors . . . not to promote Baird to [his] position" because he was racist, did not work well with others, and was unable to do the job. *Id.* He also believes "Baird disliked [Vasquez] and resented him because [he] did a better job than Baird and was a threat to him." *Id.* at 4. Despite these warnings, the City promoted Baird to Powell's position.

After Powell retired, Vasquez discovered a vault that was buried in the wrong plot. Dkt. 20-4, at 8–9. Vasquez reported the misplaced vault to Baird, who did nothing. *Id.* Vasquez claims he reported Baird's inaction to the City's Superintendent of Parks and Cemeteries, Brent Martin, who also failed to take action. *Id.* In the Summer of 2013, Baird asked Vasquez to break another buried vault to make room for a new vault. *Id.* Vasquez refused. *Id.* Baird then broke the vault himself. *Id.* Vasquez again claims he reported the incident to Martin, who did not take any action. *Id.* Martin admits that he is aware of "at least two instances of possible damage or mix-ups occurring with burial plots during the course of Plaintiff's employment with the City." Dkt. 20-5, at 2.

However, he maintains he "learned about th[e] mix-up[s] through word-of-mouth around the office, and received no written or verbal report of the incident[s] from Plaintiff." *Id.* As to the 2013 incident specifically, Martin maintains that "Baird ultimately did not damage the vault in question" and that he "received no written or verbal report of the incident from Plaintiff." *Id.*

From 2007 to 2015, Vasquez received several promotions and steady pay increases. *See* Dkt. 25-1 (employment file). His employment file contains one performance evaluation, which Powell completed in October of 2008. Dkt. 24-12, at 2. The review indicates that Vasquez is "[a] very good employee" who "cares about his work," "[w]orks well with families and . . . has good ideas for the job." *Id.*

During his employment with the City, Vasquez supervised a handful of people, including Sergio Soto, Tanisha Kunz, and Brady Stevens (Baird's nephew). On Sunday, November 1, 2015, Kunz reported to Martin that Vasquez had been sexually harassing her for some time. Dkt. 20-5, at 2. Martin had Kunz prepare a written statement chronicling the harassment she had experienced. *Id.*; Dkt. 20-6. That day, Martin also received written statements from Stevens and Soto, confirming some of Kunz's sexual harassment allegations and outlining other complaints they had about Vasquez. Dkt. 20-5, at 3; Dkts. 20-8, 20-9. All three complained that Vasquez would swear at and put down subordinates and call them offensive names. Martin also received a note from Mike Jones, an employee with Idaho Falls Monuments, that stated he felt like he could not go to the Rose Hill Cemetery any more due to Vasquez's actions. Dkt. 20-7. However, the note did not provide any details about Vasquez's actions that caused this feeling.

Martin reported all of these complaints to Greg Weitzel and the Human Resources Department, and provided them with copies of the written statements he had received. Dkt. 20-5, at 3. While investigating the complaints, Martin also learned, although it is unclear how exactly, that Vasquez had terminated an employee, Art Alvarez,[2] without authority and without providing him with the required "notice of contemplated action." Dkt. 20-5, at 3.

On Monday, November 2, 2015, Weitzel and Martin entered Vasquez's office, asked for his keys, told him to leave, and told him not to enter either of the City's cemeteries until further notice. Dkt. 24-2, at 3. Vasquez asked about the personal belongings he kept in his work desk; Weitzel and Martin stated that they would be safe. *Id.*

Vasquez was asked to come to Weitzel's office on November 6, 2015. *Id.* On that day he met with Weitzel, Martin, and Melanie Marsh, the Director of Human Resources. *Id.* They gave Vasquez copies of the written statements Kunz, Soto, and Stevens had submitted to Martin. *Id.* They also confronted Vasquez about the termination of Art Alvarez. *Id.* Vasquez asserts that "[t]his was the very first time [he] had ever been notified that anyone had ever accused [him] of sexual or other harassment or for improperly firing Art Alvarez." *Id.* It is not clear what else transpired during this meeting.

---

[2] This individual's name appears to be Arturo Alvarez Rodriguez. The parties use both "Art" and "Arturo" to refer to his first name, and both "Alvarez" and "Rodriguez" to refer to his last name. This memo refers to him as "Art Alvarez."

Apparently at the end of the meeting Vasquez stated that he needed some belongings from his desk, including some medication and the calendars and notebook in which he had recorded Baird's improprieties. *Id.* Martin retrieved the medication, but stated the City would "have to go through [the calendars and notebook] to determine whether there was anything related to the city before they could return them." *Id.* at 4. Vasquez recorded this conversation and submitted it to the Court on a CD. According to Vasquez, Martin still has not returned the calendars or notebook and, at a later grievance hearing, Martin stated that he was unaware of the existence of the calendars or notebook.[3] *Id.* Vasquez's wife confirms that she has seen the contents of the spiral notebook Vasquez kept in his desk. Dkt. 24-5, at 2.

Vasquez maintains that the allegations made by Kunz, Soto, and Stevens are false and fabricated. He has submitted affidavits from other employees stating that the allegations of sexual harassment are false. For example, Whitney Manzanares, a laborer who worked with Vasquez, Soto, and Kunz, who was also Kunz's roommate for a short period of time, maintains that Vasquez was always professional and respectful while Kunz engaged in "sexual banter" at work. Dkt. 24-8. Manzanares asserts that Kunz never mentioned the alleged sexual harassment to her, but would complain when Vasquez told her to get back to work and do her job. *Id.* Manzanares submitted a written statement about Vasquez to the City in November of 2015. *Id.*

---

[3] The notebooks are the subject of a spoliation issue.

Vasquez also submitted an affidavit from Jesse Alvarez. Jesse Alvarez is one of Vasquez's and Soto's close friends. Dkt. 24-9. Jesse Alvarez maintains that Vasquez was always polite and respectful, while Soto used sexually explicit and offensive language at work and "treat[ed] women as sexual objects." *Id.* Jesse Alvarez also states that Soto never complained to him about Vasquez's alleged sexual harassment, even though they were close friends. *Id.*

Next, Vasquez submitted the affidavit of Gustavo Chavez. Chavez is also one of Vasquez's and Soto's close friends. Dkt. 24-10. Chavez also maintains that Vasquez was always respectful while Soto used offensive language, "treat[ed] women as sexual objects," committed acts of domestic violence, and has a history of dishonesty. *Id.* Vasquez and Chavez believe Soto lied to have Vasquez fired so he could take Vasquez's job. *Id.* On October 31, 2015—the day before Soto submitted his written statement to Martin—Soto told Chavez that he was "going to be the new boss at the cemetery." *Id.* Vasquez asserts that in the few weeks leading up to his termination he had confronted Soto for not doing his work, taking long breaks, and drinking with underage co-workers on breaks. Vasquez claims this confrontation caused animosity in their relationship, which lead Soto to lie about Vasquez.

Finally, Vasquez asserts that he did not fire Art Alvarez without the proper authority. Rather, he claims Art Alvarez was given the opportunity to save his job with the City, but decided to pursue other employment. *See* Dkt. 24-13. The City's records indicate that Alvarez resigned from his position. Dkt. 24-14.

On November 9, 2015, Vasquez received a Notice of Contemplated Action, informing him that the City was contemplating the termination of his employment. Dkt. 20-12. The notice listed four examples of conduct it was investigating and considering as grounds for termination: (1) sexual harassment, intimidation, and discrimination of a fellow employee; (2) the unauthorized termination of an employee; (3) offensive or immoral activity while on duty; (4) failure to cooperate with fellow employees and dishonesty in the performance of job duties. *Id.* The notice also informed Vasquez that the City would hold a meeting on November 13, 2015, at 1:00 pm, during which Vasquez would have the opportunity to present reasons for why the City should not terminate him. *Id.*

On November 13, 2015, Vasquez met with Weitzel, Martin, and Marsh. Dkt. 20-5, at 4. During that meeting, Vasquez asserted (according to Martin, for the first time) that Baird was racist. *Id.* Vasquez also asserted (again according to Martin, for the first time) that Baird had damaged buried vaults and buried caskets in the wrong plots.

After the meeting, Weitzel, Martin, and Marsh determined that termination was appropriate because the reports of four employees corroborated that Vasquez had violated multiple City personnel policies. *Id.* Vasquez received a Notice of Termination on November 16, 2015. Dkt. 20-13. While Weitzel, Martin, and Marsh, were determining whether to terminate Vasquez, "Baird was under investigation for improper use of City equipment." Dkt. 28-1, at 2. Accordingly, Baird was not acting as a supervisor when the City terminated Vasquez and the City did not consult Baird before terminating Vasquez. *Id.*

Vasquez asserts that the City filled Vasquez's position with a younger, Caucasian man named Dave Hodson. The City maintains it has not filled Vasquez's position as Cemetery Lead Maintenance Operator. Dkt. 28-1. Rather, the City had Hodson, a worker from the City's irrigation division, help with some of the extra workload created by Vasquez's termination. *Id.*

On December 21, 2015, Vasquez appealed the decision to terminate him. Dkt. 20-14. Vasquez met with Weitzel and an unnamed "Initial Hearing Officer" ("IHO") on December 30, 2015. On December 31, 2015, Weitzel and the IHO informed Plaintiff that, after carefully reviewing all facts and information Vasquez presented during their December 30 meeting, they had determined that Vasquez's termination was reasonable and warranted. Dkt. 20-15.

Vasquez appealed the decision upholding his termination. Mayor Rebecca Casper appointed a Final Hearing Panel ("FHP") to hear Plaintiff's appeal. The FHP consisted of Council President Thomas Hally and Municipal Services Director Pam Alexander, neither of whom are employees of the City Parks or Cemetery Departments. Dkt. 20-11. The FHP held a hearing on Vasquez's termination on February 1, 2016. However, the recording equipment the City used at the hearing did not create a transcribable, verbatim record, as required. Dkt. 20-11, at 2. Vasquez did not waive the recording requirement, so the FHP held another hearing on March 18, 2016. *Id.* During the hearing, Vasquez was able to present evidence and witnesses. *Id.* Thirteen individuals testified at the hearing and the parties presented thirty-three documents for the FHP to consider. Id. at 2–4. Vasquez submitted the recording of the hearing to the Court on a CD. On April 11, 2016,

the FHP issued a decision concluding that the City did "not unjustifiably terminate" Vasquez, his superiors did not treat Vasquez inappropriately, and the City afforded Vasquez "an opportunity to resolve errors and disputes." *Id.* at 4.

Vasquez filed suit in this Court against the City on April 29, 2016. However, Vasquez did not serve the City until July 26, 2016. Dkt. 4. Vasquez then filed an Amended Complaint on August 29, 2016. Dkt. 8. The Amended Complaint does not distinctly enumerate the claims Vasquez is pursuing. Rather the Amended Complaint generally states "[t]his action for money damages and declaratory relief arises under [] Title VII of the Civil Rights Act of 1964, . . . the Idaho Human Rights Act, . . . the Idaho Public Employee Protection Act ("IPEPA"), . . . and Idaho common law." *Id.*

The City moved for summary judgment on September 29, 2017. Dkt. 20. Within the Motion for Summary Judgment, the parties dispute what claims Vasquez actually asserted in his Amended Complaint. The parties agree Vasquez has asserted claims for (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, (2) racial discrimination in violation of the Idaho Human Rights Act ("IHRA"), and (3) retaliatory discharge in violation of the Idaho Public Employee Protection Act ("IPEPA"). These are the only three claims the City addressed in its opening brief. Vasquez argues that he also asserted claims for (4) retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, and (5) spoliation of evidence, an intentional tort under Idaho common law. In its reply brief, the City addressed these two additional claims. Vasquez then filed a motion to strike the portions of the City's reply brief that

address these two claims. Dkt. 29. Finally, the City also moved to strike the affidavit of

Daris Powell from the record. Dkt. 28.

The Court held oral argument on the pending motions on November 22, 2017. At

the end of oral argument, the Court took the motions under advisement.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In

considering a motion for summary judgment, this Court must "view[] the facts in the

non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent

need only present evidence upon which "a reasonable juror drawing all inferences in

favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted).

Accordingly, this Court must enter summary judgment if a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the

pleadings to defeat a motion for summary judgment; rather the respondent must set forth

the "specific facts," supported by evidence, with "reasonable particularity" that precludes

summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.

2001).

# IV. ANALYSIS

## A. Employment Discrimination Claims

### 1. The Applicable Law

The Court analyzes Plaintiff's Title VII Claim through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this analysis, a plaintiff must first establish a prima facie case of employment discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). A plaintiff may establish a prima facie case based on circumstantial evidence by showing: (1) he is a "member[ ] of a protected class"; (2) he was "qualified for [the] position[ ] and performing [his] job satisfactorily"; (3) he "experienced adverse employment action[ ]; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id.* at 1156. A plaintiff need not always meet the above four-part test to establish a prima facie case; instead, a plaintiff can "provid[e] direct evidence suggesting that the employment decision was based on an impermissible criterion." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citing *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997)). "At summary judgment, the degree of proof necessary to establish a prima facie case is 'minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005).

If a plaintiff establishes a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory

reason for the challenged action." *Hawn*, 615 F.3d at 1155. If the employer does so, the "plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the termination are] mere pretext for unlawful discrimination." *Id.*

The analysis of Vasquez's Idaho Human Rights Act claim "is identical in all respects to the analysis of his Title VII claim." *Kamdem-Ouaffo v. Idahoan Foods, LLC*, 243 F. Supp. 3d 1130, 1141 (D. Idaho 2017); *Mackay v. Four Rivers Packing Co.*, 179 P.3d 1064, 1069 (Idaho 2008) ("The purpose of the IHRA is to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended . . . ."). Therefore, if summary judgment is appropriate on the Title VII claim, then summary judgment is also appropriate on the IHRA claim. *Kamdem-Ouaffo*, 243 F. Supp. 3d at 1141.

## 2. *Application*

### a. Vasquez's Prima Facie Case

The first and third elements of Vasquez's prima facie case are not at issue. The parties explicitly agree that Vasquez is a member of a protected class (Hispanic) and he experienced an adverse employment action (termination).[4] The City focuses its analysis on the fourth element: whether Vasquez has shown that "similarly situated individuals outside his protected class were treated more favorably, or [that] other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn*, 615 F.3d at 1156.

---

[4] Neither party addressed whether Vasquez satisfied the third element.

Vasquez asserts that he established the fourth element of his prima facie case first because he was treated less favorably than similarly situated non-Hispanics. For example, Vasquez argues, he did not receive the benefits of the City's progressive disciplinary process, which involves informal coaching, verbal and written warning, and work improvement plans. Instead, Vasquez asserts, the City terminated him without any of these intermediate steps and without a vigorous investigation. Vasquez juxtaposes his situation with Baird, a Caucasian male, who committed acts of racial discrimination for years without any investigation or termination.

There are several flaws in Vasquez's argument. First, Baird is not necessarily a "similarly situated" individual because different allegations were raised against Baird and Vasquez and they hold different positions. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), as amended (Jan. 2, 2004) ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."). Second, it is not clear why Vasquez highlights that he did not go through the City's progressive disciplinary process. There is no evidence that Baird went through this process either. Rather, Vasquez's allegation is that the City never disciplined Baird for his racist comments. Nevertheless, an inference of discrimination could be raised if it is true that individuals complained to the City about Baird's racist comments, and the City chose not to investigate and punish Baird, while it investigated and terminated Vasquez. However, there is a question of fact at issue as to whether the City actually received complaints about Baird. Thus, this is ultimately a jury question.

Next, Vasquez alleges that the City replaced him with a younger Caucasian man. There is also a dispute of material fact on this point. The City maintains that they have not replaced Vasquez, but that they have brought a Caucasian man on to the Cemeteries' work force to help with the extra workload created in Vasquez's absence. A jury could find that the City replaced Vasquez with a Caucasian man in function if not in name. Thus, the Court finds there are questions of material fact that preclude a decisive finding on this issue.

As stated above, Vasquez can also establish a prima facie case "by providing direct evidence suggesting that the employment decision was based on an impermissible criterion." *Boeing Co.*, 577 F.3d at 1049. "[D]erogatory comments can create an inference of discriminatory motive." *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (finding alleged comments made by manager that employee "was a 'dumb Mexican' and that he was hired because he was a minority" sufficient to establish prima facie case). For example, in *Boeing*, the plaintiff presented evidence that her supervisor frequently made demeaning and derogatory comments about women. 577 F.3d at 1050. The Ninth Circuit found these comments, along with the plaintiff's interactions with her supervisor over the course of her employment, were sufficient to create an inference of discriminatory motive even though the comments were not directed specifically at the plaintiff or made in regard to decisions about her employment. *Id.*; *see also Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991), *superseded on other grounds as recognized by Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005); ("[T]he fact that stereotyped remarks were made by

[plaintiff's] superiors at the same time that they were subjecting her to less favorable working conditions is sufficient to raise an inference of discriminatory intent."). Vasquez has alleged his supervisor, Baird, repeatedly made discriminatory comments about Hispanics to and around Vasquez. He has supported this allegation with affidavits from others who heard the comments. Although Baird did not make the comments in connection with Vasquez's termination, they are sufficient to raise an inference of racial discrimination under the Ninth Circuit precedent discussed above. Accordingly, the Court finds Vasquez has met his low burden of establishing a prima facie case of racial discrimination.

### b. The City's Reasons for Terminating Vasquez

Under the burden-shifting framework, the burden of production now shifts to the City to "articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155. The City has produced multiple legitimate, non-discriminatory reasons for termination: it had reason to believe Vasquez sexually harassed Kunz, cursed at and put down City employees, and fired an employee without authorization and without following the proper procedures.

### c. Evidence of Pretext

Because the City has satisfied its burden, the burden shifts back to Vasquez to "raise a triable issue of material fact as to whether the [City's] proffered reasons for [the termination are] mere pretext for unlawful discrimination." *Id.* "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence."

*Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). If the plaintiff proves pretext indirectly, circumstantial evidence of pretext must be "specific and substantial" to survive a motion for summary judgment. *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

### i. Direct Evidence of Pretext

The Court first addresses whether Vasquez has shown "that discrimination more likely motivated the employer." 349 F.3d at 641. Vasquez argues he has met this standard based on his allegations that Baird, his supervisor, was discriminating against him and, although he did not have the power to terminate him, he had influence over the decision to terminate Vasquez. This has been called "the 'cat's paw' theory of liability." *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). Under this theory, a "subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (collecting cases applying this standard to different types of Title VII cases). In order to survive summary judgment on such a theory, the plaintiff must adduce "non-speculative evidence of specific facts" that "give rise to a reasonable inference that [such events] did in fact occur." *Cafasso*, 637 F.3d at 1061. The Court notes that, when "an employer . . . confine[s] decision-making power to a small number of individuals, . . . the employer may be held to have effectively delegated the power to take tangible employment actions

to the employees on whose recommendations it relies." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2452 (2013).

In support of his allegation that Baird was involved in or had influence over the decision to terminate him, Vasquez cites the declaration of Daris Powell. Powell retired from his position as sexton of the Idaho Falls' Cemeteries in 2010. After he retired, the City promoted Baird to Powell's position. Powell asserts that, although he was not the final decision maker, he "had a significant amount of influence" over the many employee hirings and firings that occurred while he was sexton. Dkt. 24-7, at 4. With regard to firings, the Director of the Department of Parks and Recreation or the Superintendent of Parks and Cemeteries would "always ask[] for [Powell's] input regarding the employee's daily job performance and interactions with other employees and for [his] recommendation." *Id.* Powell asserts that the City "almost always followed [his] hiring and firing recommendations." *Id.* Accordingly, Powell maintains, "those formally charged with [Vasquez's] final termination decision would certainly have sought and obtained Baird's recommendation, input, and knowledge regarding [Vasquez's] employment and the circumstances giving rise to his proposed termination, and they would have given his recommendation significant weight." *Id.* at 4–5.

Powell's declaration is the subject of one of the motions to strike pursuant to Federal Rule of Evidence 602. Dkt. 28. When ruling on a motion for summary judgment, "a trial court can only consider admissible evidence." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir.2002). Thus, the Court must determine whether Powell's statements would be admissible at trial. Under Rule 602, "[a] witness may testify to a

matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The City argues parts of Powell's affidavit would not be admissible at trial because Powell has no personal knowledge of the statements he made. The Court agrees, at least for a small portion of the affidavit. The Court finds Powell does not have personal knowledge of whether "those formally charged with [Vasquez's] final termination decision would . . . have sought and obtained Baird's recommendation, input, and knowledge regarding [Vasquez's] employment and the circumstances giving rise to his proposed termination," and whether "they would have given [Baird's] recommendation significant weight." Powell based this statement on his experience working for the City five years earlier, not on his personal knowledge of the events leading up to Vasquez's termination. Accordingly, the Court finds it appropriate to strike this limited portion of Powell's declaration and disregard it for the purposes of ruling on the pending motion for summary judgment.

Vasquez has failed to cite any other evidence in support of his assertion that Baird was involved in his termination. Notably absent from the record is a declaration from Baird. Baird certainly would have had knowledge of whether Martin, or other City employees, sought his input before terminating Vasquez. At oral argument, the City made it clear that Baird no longer works for the City of Idaho Falls and would, presumably, have no qualms providing evidence to Vasquez that would be detrimental to the City. This is a gaping hole in Vasquez's case.

The City replied on this point with another affidavit from Martin, who declares that, at the time the City terminated Vasquez, "Baird was under investigation for

improper use of City equipment." Dkt. 28-1, at 2. Due to this investigation, Martin

maintains, Baird was not acting as a supervisor when the City terminated Vasquez and

the City did not consult Baird before taking this action.[5] *Id.* Because the City has

provided evidence that Baird did not participate in the decision to terminate Vasquez, and

Vasquez has failed to counter this evidence, there is no question of material fact as to

whether Vasquez will ultimately succeed on his cat's paw theory. There is no evidence

that the City relied on Baird's recommendation and in doing so "effectively delegated the

power to" terminate Vasquez to Baird. *See Vance*, 133 S. Ct. at 2452. Without this

evidence, Vasquez has not directly shown that discrimination likely motivated the City.

*See* 349 F.3d at 641.

### *ii. Indirect Evidence of Pretext*

The Court next addresses whether Vasquez has provided indirect evidence of

pretext. As stated above, Vasquez can show pretext indirectly, by showing that the City's

reasons for termination are "unworthy of credence." *Id.* Because the City has offered

multiple reasons for Vasquez's termination, the Court examines each reason separately.

First, there is a question of fact as to whether the City in fact fired Vasquez

because of his treatment of Art Alvarez. Vasquez asserts he did not actually fire Alvarez

and the City's records indicate that Art Alvarez resigned from his position.

---

[5] The Court notes that [w]here new evidence is presented in a reply to a motion for summary judgment, [a] district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (internal alteration omitted) (internal quotation marks omitted). "However, by failing to object to or otherwise challenge the introduction of the [affidavit]," Vasquez has "waived any challenge on the admissibility of this evidence." *Getz v. Boeing Co.*, 654 F.3d 852, 868 (9th Cir. 2011).

The Court next turns to the allegations of sexual harassment. Vasquez first argues that, in deciding the motion for summary judgment, the Court cannot consider the written statements Kunz, Soto, and Stevens gave to Martin on November 1, 2015, that describe the sexual harassment and other inappropriate and disrespectful acts Vasquez allegedly committed. Vasquez asserts these statements are unsworn, unauthenticated hearsay and thus inadmissible under Federal Rules of Evidence 802 and 901. As stated above, "[a] trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e)). However, the Court "need not decide whether the [written statements themselves are] admissible." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The Ninth Circuit has instructed this Court to "focus on the admissibility of [the statements'] contents" rather than "the admissibility of the evidence's form." *Id.* In *Fraser*, the Ninth Circuit found it was proper for the district court to have considered the contents of a diary at summary judgment because "depending on the circumstances," the contents of the diary "could be admitted into evidence at trial in a variety of ways," such as through the diary's author's direct testimony. *Id.* at 1037. Similarly here, the contents of the three written statements could be admitted through the direct testimony of Kunz, Soto, and Stevens. Therefore, the Court concludes it may consider these three written statements at the summary judgment stage. *See also Jeffries v. Las Vegas Metro. Police Dep't*, No. 16-16483, 2017 WL 4653434, at *1 (9th Cir. Oct. 17, 2017) (holding district court did not err in considering "exhibits attached to the [defendant's] motion [for

summary judgment]" in granting summary judgment in defendant's favor, because the exhibits "could be authenticated and provided in an admissible form at trial").

Nevertheless, Vasquez argues, the City's decision to terminate him is unworthy of credence primarily because the allegations of sexual harassment are false. In support of this argument, he maintains that his accusers have a history of dishonesty and misconduct and that they were motivated to lie because Soto wanted Vasquez's job. Vasquez also points to the fact that no one ever complained about him prior to November 1, 2015—a Sunday—even though Kunz claims Vasquez harassed her for six and a half years.

Vasquez's arguments miss the mark. Like Vasquez, in *Villiarimo v. Aloha Island Air, Inc.*, the plaintiff challenged her employer's reasons for termination by "attack[ing] the credibility of the three witnesses who" recited a different version of events than the plaintiff during the investigation into the events that led to the plaintiff's termination. 281 F.3d 1054, 1063 (9th Cir. 2002). The Ninth Circuit found these credibility attacks "unavailing." *Id.* The Ninth Circuit explained that, "[i]n judging whether [the employer's] proffered justifications were 'false,' it [was] not important whether they were objectively false." *Id.* "Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Id.* (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)). Thus, the plaintiff would not succeed on her Title VII claim by showing the witnesses' version of events was untrue, but rather by "present[ing] . . . evidence that [the employer] did not honestly believe its proffered reasons [for termination]." *Id.* Because the plaintiff in *Villiarimo* failed to make

this showing, the Ninth Circuit affirmed the district court's grant of summary judgment in the employer's favor. *Id.*

Following *Villiarimo*, this Court need not determine whether Kunz, Soto, and Stevens' allegations of sexual harassment against Vasquez were actually true. Rather, the proper focus is whether the City believed they were true. Vasquez has failed to present any evidence that the City "did not honestly believe its proffered reasons" for terminating Vasquez. *Id.* The City was required to take such sexual harassment allegations very seriously, investigate them, and take action if they found them credible. The City did just that. Multiple employees corroborated the allegations, strengthening their credibility. Yes, the City may have erred on the side of caution in the face of detailed allegations of ongoing and severe harassment, but this caution is not a reason to call the termination into question, nor is it evidence of discrimination. The City had a tough choice to make: if the City had not taken action against Vasquez, Kunz may have had a viable claim against the City. Moreover, Vasquez appealed the decision to terminate him twice and in both appeals the reviewers found termination was warranted in light of the allegations. Vasquez has failed to identify any point in this administrative process that shows the City did not honestly believe the sexual harassment allegations. In sum, Vasquez has failed to provide "specific and substantial" circumstantial evidence that the City's decision to terminate him based on alleged sexual harassment was pretext for racial discrimination. *See Lyons*, 307 F.3d at 1112.

Vasquez has failed to show—with either direct or circumstantial evidence—that the City's proffered valid reasons for termination are pretextual. Because Vasquez has

failed to show pretext, under the *McDonnell Douglas* framework, "the challenged employment action 'must stand.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (citation omitted). Accordingly, the Court must grant summary judgment in the City's favor on Vasquez's Title VII discrimination claim and the IHRA claim.

## B. Retaliation Claims

### 1. The Applicable Law

Vasquez asserts two retaliation claims: violation of Title VII and violation of the IPEPA. The IPEPA, also known as the Idaho Whistleblower Act, "seeks to protect the integrity of the government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1137 (D. Idaho 2015) (internal quotation marks omitted); Idaho Code § 6–2101. At the summary judgment stage, the *McDonnell Douglas* analysis applicable to retaliatory discharge cases applies to an IPEPA claim. *Summers*, 84 F. Supp. 3d at 1137. Under this analysis, the plaintiff first "must establish a prima facie case of retaliatory conduct for an action protected by the relevant whistleblower statute." *Curlee v. Kootenai Cnty. Fire & Rescue*, 224 P.3d 458, 463 (Idaho 2008). "Under Idaho's Whistleblower Act, a prima facie case for retaliatory discharge requires [the employee] to show: (1) he was an employee who engaged or intended to engage in protected activity; (2) his employer took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Van v. Portneuf Med. Cntr.*, 330 P.3d 1054, 1059 (Idaho 2014) (quoting Van, 212 P.3d at 988). "[O]nce the plaintiff

demonstrates a prima facie case, the defendant is obligated to produce evidence which, if taken as true, would permit the conclusion that there was a non-retaliatory reason for the adverse action." *Id.* "[I]f the defendant articulates a legitimate non-retaliatory reason for discharge, then the burden shifts to the plaintiff to prove by a preponderance of the evidence that the reason the defendant offers is a pretext for retaliatory conduct." *Id.*

The analysis for the Title VII claims is only slightly different than the analysis for the IPEPA claim. The IPEPA is designed to protect Vasquez's to the extent his termination is connected to his complaints that Baird was failing to comply with state laws and regulations. In contrast, Title VII protects Vasquez to the extent his termination is connected to his complaints regarding Baird's alleged racism.

In its reply brief, the City argues Vasquez asserted a claim for retaliatory discharge under Title VII for the first time at the summary judgment stage and asks the Court to dismiss this claim. The Court disagrees. The Amended Complaint alleges that "[t]he City fired Vasquez because of his race, and *in retaliation for his complaints* about and protest of (1) the racial harassment and discrimination to which he was subjected, in violation of TITLE VII and IHRA." Dkt. 8, at 2 (emphasis added). This allegation put the City on notice of the retaliation claim Vasquez was pursuing and the City chose not to challenge whether Vasquez had asserted sufficient facts to support this claim at the motion to dismiss stage. Thus, the Court rejects this argument. Nevertheless, whether Vasquez asserted such a claim in his Amended Complaint is ultimately inapposite because, as explained below, this claim fails at this stage.

## 2. *Application*

### a. IPEPA Claim

The Court questions whether Vasquez has established a prima facie case of retaliation with regard to both the IPEPA claim and the Title VII retaliation claim. The evidence in the record before the Court showing a causal connection between Vasquez's protected activity and his termination is scant. However, the Court need not belabor the analysis of this point. Even assuming Vasquez has established a prima facie case of retaliatory discharge, his claims would still fail under the *McDonnel Douglas* framework. As explained at length in the previous section, the City has proffered a valid reason for discharging Vasquez. In addition, Vasquez has failed to show, with either direct or circumstantial evidence, that the proffered reason is pretext for unlawful retaliatory conduct. *See Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). First, Vasquez has offered no direct evidence that the termination was motivated by retaliatory animus. Second, as explained at length in the previous section, Vasquez's attempts to show circumstantially that the City's proffered reason for discharge is unworthy of credence are unavailing. In the absence of either direct or circumstantial evidence of pretext, the Court must grant summary judgment in the City's favor on both retaliation claims. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 801 (9th Cir. 2003) ("Because Manatt failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the Bank must be affirmed.").

## C. Spoliation

Finally, Vasquez asserts that in addition to his wrongful discharge claims he also asserted a claim for spoliation of evidence, which is a tort under Idaho common law. *See Ricketts v. E. Idaho Equipment, Co.*, 51 P.3d 392, 395–96 (Idaho 2002). The City argues Vasquez did not set forth a claim for spoliation in his Amended Complaint and that the Court should not allow Vasquez to proceed with such a claim.

The Court need not decide whether Vasquez sufficiently stated a spoliation tort in his Amended Complaint. The tort of spoliation is only actionable under state law. Even assuming Vasquez asserted a valid spoliation claim, the Court finds dismissal of this claim would be appropriate because the Court no longer has subject matter jurisdiction over the claim. As explained above, the Court finds summary judgment is appropriate on all of Vasquez's federal claims. After dismissing all of Vasquez's federal claims, the requirements of federal question jurisdiction are no longer satisfied. *See* 28 U.S.C. §§ 1331; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The requirements of diversity jurisdiction are also not satisfied, as Vasquez and the City are residents of the same state. *See* 28 U.S.C. § 1332(a)(1); *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes."). Because the Court no longer has either federal question or diversity jurisdiction over this case, dismissal of any remaining claims is proper. *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005) ("In civil cases, subject matter jurisdiction is generally conferred upon federal district courts either through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28

U.S.C. § 1331."). Finally, it is appropriate for the Court to "raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court raises subject matter jurisdiction now and finds dismissal of any remaining state law claims is proper. The Court also denies Vasquez leave to amend, as Vasquez cannot fix this jurisdictional flaw with amendment and, therefore, amendment would be futile. *See* Fed. R. Civ. P. 15(a); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

## V. ORDER

IT IS HEREBY ORDERED:

1. The City's Motion for Summary Judgment (Dkt. 20) is GRANTED on the following four claims: (1) racial discrimination in violation of Title VII; (2) racial discrimination in violation of the IHRA; (3) retaliatory discharge in violation of Title VII; and (4) retaliatory discharge in violation of the IPEPA.

2. Any remaining claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

3. The City's Motion to Strike (Dkt. 28) is GRANTED IN PART consistent with the above analysis.

4. Vasquez's Motion to Strike (Dkt. 29) is DENIED AS MOOT.

5. The Court will enter judgment separately in accordance with Fed. R. Civ. P. 58.

DATED: December 20, 2017

David C. Nye
U.S. District Court Judge